```
          IN THE UNITED STATES DISTRICT COURT
         FOR THE MIDDLE DISTRICT OF PENNSYLVANIA
```

ANDREW KUNDRATIC                :     CASE NO. 3:12-CV-0017

    PLAINTIFF,                 :

    v.                         :     (JUDGE RICHARD P. CONABOY)

GARY THOMAS ET AL.              :

    DEFENDANTS.                :

---

**Memorandum**

We consider here Motions for Summary Judgment filed by Defendants Tina Gartley ("Gartley"), Anthony Lumbis ("Lumbis"), Gary Thomas ("Thomas"), and Arthur Silverblatt ("Silverblatt")(Docs. 84, 87, 91, and 96 respectively).  These motions have been fulled briefed by the parties and are now ripe for disposition.

**I.   Factual Background.**

This case stems from a 2006 divorce action filed by Plaintiff Andrew Kundratic ("Kundratic") against his former spouse, Sophia Kundratic, in the Luzerne County Court of Common Pleas.  That divorce proceeding, as is often the case in such matters, was highly contentious and protracted.  The parties argued vehemently over property distribution matters, Mrs. Kundratic's entitlement to alimony pendente lite, and custody of their then minor daughter, Brittany Kundratic.  The contentious nature of the divorce coupled with the fact that Kundratic changed lawyers in midstream caused

1

the proceeding to be protracted.  During the course of the divorce proceeding, Mrs. Kundratic sought and obtained a protection from abuse order that was later extended by the Luzerne County Court of Common Pleas.  The existence of the protection from abuse order complicated exchanges of custody on the days appointed for Kundratic to visit with his daughter and also complicated Kundratic's efforts to retrieve personal items from the marital abode.

While the Kundratic divorce proceeding was ongoing, Kundratic filed a federal civil rights lawsuit (Middle District of Pennsylvania No. 3:08-CV-1652)(hereinafter "Kundratic I") against his wife and Defendant Thomas who, at that time, were romantically involved.  Kundratic I was cast as a claim under 42 U.S.C § 1983 that alleged that Thomas, a state actor due to his status as a Pennsylvania State Policeman, abused his official authority to cause agents of the Rice Township Police Department to prosecute Kundratic for assault and harassment and to cause the magistrate who presided over the case to set an unreasonably high cash bail. [1] William J. Nealon (a senior judge in this Court) presided over Kundratic I and dismissed that case due to his findings that, even assuming that Thomas had done the things Kundratic attributed to him, none of Thomas' actions were performed under color of state

---

[1] Kundratic indicates that he was charged with harassment and assault and that he pled guilty to harassment due to the advice of counsel.  See Kundratic deposition (Doc. 116-2) at 49.

2

law but, rather, were performed for purely personal reasons. Judge Nealon's holding in Kundratic I was subsequently upheld by the Third Circuit Court of Appeals.

In denying various motions to dismiss the instant case, this Court ruled (Doc. 64) that it would not revisit facts and issues decided in Kundratic I due to the doctrine of res judicata. The Court ruled further that Kundratic would be given the opportunity to adduce evidence through discovery that Thomas had abused his position as a "state actor" to violate his constitutional rights in some fashion. Kundratic was pointedly informed in this Court's prior Memorandum and Order (Docs. 64 and 65) that to sustain this lawsuit he would be required to show that Thomas, singly or in combination with the other Defendants, abused his official authority to Kundratic's detriment between July 2,2009 (the date Judge Nealon dismissed Kundratic I) and January 4, 2012 (the date when the instant lawsuit was filed).

Numerous depositions have now been taken in this matter, the time for discovery has run, and it is this Court's task to review such evidence as Kundratic has called to our attention in order to determine whether there are justiciable issues of material fact sufficient to require submission of this case to a jury.

**II. Summary Judgment Standard.**

Summary judgment is appropriate when the movant demonstrates there is no "genuine issue as to any material fact." Fed. R. Civ.

3

P. 56(a). "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

"An issue is genuine only if there is a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party, and a factual dispute is material only if it might affect the outcome of the suit under governing law." *Kaucher v. County of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006) (citing *Anderson*, 477 U.S. at 248). In determining whether a genuine issue of fact exists, a court must resolve all factual doubts and draw all reasonable inferences in favor of the nonmoving party. *Conoshenti v. Public Serv. Elec. & Gas Co.*, 364 F.3d 135, 140 (3d Cir. 2004) (citation omitted).

The initial burden is on the moving party to show an absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986) (citations omitted). The moving party may meet this burden by "pointing out to the district court [] that there is an absence of evidence to support the nonmoving party's case when the nonmoving party bears the ultimate burden of proof." *Id.* at 325. The non-moving party may not rest on the bare allegations contained in his or her pleadings, but is required by Federal Rule of Civil Procedure 56 to go beyond the pleadings by

4

way of affidavits, depositions, answers to interrogatories or the like in order to demonstrate specific material facts which give rise to a genuine issue. *Id.* at 324.

"In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of evidence." *Anderson*, 477 U.S. at 255. Therefore, when evidentiary facts are in dispute, when the credibility of witnesses may be in issue, or when conflicting evidence must be weighed, a full trial is usually necessary. Nonetheless, the party opposing summary judgment must support each essential element of the claim with concrete evidence in the record. *Celotex, supra* at 322-23. This requirement upholds the underlying purpose of the rule, which is to avoid a trial "in cases where it is unnecessary and would only cause delay and expense." *Goodman v. Mead Johnson & Co.*, 534 F.2d 566, 573 (3d Cir. 1976). Therefore, if, after making all reasonable inferences in favor of the non-moving party, the court determines that there is no genuine issue of material fact, summary judgment is appropriate. *Celotex, supra*, at 322; *Wisniewski v. Johns-Manville Corp.*, 812 F.2d 81, 83 (3d Cir. 1987). If the non-movant's evidence is merely speculative, conclusory, "or is not significantly probative, summary judgment may be granted." *Anderson, supra*, at 249-50 (internal citation omitted).

A plaintiff's mere belief is not enough to create a dispute of material fact sufficient to survive summary judgment. See

5

*Lexington Ins. Co. V. W. Pa. Hosp.,* 423 F.3d 318, 333 (3d Cir. 2005) (holding that speculation is not sufficient to defeat a motion for summary judgment). Our circuit has stated: "...summary judgment is essentially 'put up or shut up' time for the non-moving party; the non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument." *Berckeley Inv. Grp., Ltd. V. Colkitt,* 455 F.3d 195, 201 (3d Cir. 2006).

**III. Legal Analysis.**

While Kundratic's claim alleges a broad conspiracy among Thomas (his ex-wife's former paramour), Silverblatt and Lumbis (who both represented Kundratic at different stages of his divorce proceeding), and Gartley (who represented his wife in the divorce proceeding) to violate his First and Fourteenth Amendment rights as "state actors" pursuant to 42 U.S.C. § 1983, his claim must rise or fall at this point by making some demonstration that Thomas, the only Defendant who could properly be characterized as a "state actor" due to his status as a Pennsylvania State Policemen, used his official authority in some fashion to deprive Kundratic of constitutionally protected rights or property interests. However, the mere fact that Thomas is a police officer does not transform his every action into an exercise of official power. Rather, to have acted under color of state law requires that the party so characterized "had exercised power 'possessed by virtue of state

6

law and made possible only because the wrongdoer is clothed with the authority of state law.'" *Abbott v. Lastsahw*, 164 F.3d 141, 146 (3d. Cir. 1998)(citing *West v. Atkins*, 487 U.S. 42, 49)(1998)).

A person not in the employ of the state may still be appropriately characterized as a "state actor" if "he is a willing participant in joint action with the State or its agents." *Adickes v. S.H. Kress & Company*, 398 U.S. 144, 152 (1970)(citing U.S. v. Price, 383 U.S. 787, 794 (1966). An indispensable element of a conspiracy that is actionable under 42 U.S.C. § 1983 and the Fourteenth Amendment, as Kundratic purports this case to be, is that at least one of the participants must be a "state actor". *Lugar v. Edmondson Oil Company, Inc.*, 457 U.S. 922, 928-29 (1982).

The aforementioned precedents establish that, to prove that an actionable conspiracy existed as alleged in this case, the Plaintiff must adduce evidence that the pivotal alleged co-conspirator, Defendant Thomas, somehow abused his status as a policeman to deprive Kundratic of some constitutionally protected right. To determine whether enough evidence of that type has been produced, the Court has carefully read all depositions taken in this case with particularly close scrutiny of the depositions of Defendant Thomas and Plaintiff Kundratic.

Plaintiff's brief in opposition to Defendant Thomas' Summary Judgment Motion (Doc. 120) points to several events that purportedly establish that Thomas, in his capacity as a state

7

actor, wrongfully deprived Kundratic of his property or impeded his access to the Court. We will discuss these events in turn and in relation to the relevant case law identified above.[2]

  A.  The Blog

Kundratic's first argument is that Thomas "acted under the badge of state authority" (Doc. 120 at 15), when, in the course of participating in a "blog" on the Internet, he referred to himself at one point as "this officer", (Id.). The blog in question was used by Thomas ("New Home Owner") and Kundratic ("Mountaintop Resident") along with numerous unidentified participants, to argue, inter alia, about whether the Pennsylvania State police habitually abused their authority in carrying on affairs with married women. See Doc. 116, Ex. F. More specifically, Thomas, using the pseudonym New Home Owner, wrote,

> It is obvious that if you own a half a million dollar home you had an expensive lawyer yet you claim to be the victim of a false P.F.A. Sounds like someone is a wife and child beater. It seems that you would be happy if the hit man got to this officer.

---

[2] It should be noted that in the "Standard of Review" section of Plaintiff's brief, Plaintiff takes the position that certain case law that is applicable only in the context of employment discrimination cases should hold sway here. Plaintiff is incorrect this regard and the Court will not apply that case law to the instant case. (See Doc. 120 at 13-15).

8

Kundratic characterizes Thomas' reference to himself as "this officer" [3] as "fatal to Gary Thomas's defense that he is acting in a private capacity." (Doc. 120 at 15-16). Kundratic is simply incorrect in this regard. Thomas' mere reference to himself as "this officer" was not made in conjunction with an effort to arrest Kundratic or otherwise invoke police authority over him. The invocation of police authority is the sine qua non necessary to transform a policeman involved in a purely personal pursuit into a "state actor" under 42 U.S.C. § 1983. *Barna v. City of Perth Amboy,* 42 F.3d 809, 818-19 (1994). Thomas and Kundratic were in completely separate locations when the exchange in question took place. Thomas was merely stating a fact with which Kundratic had long been acquainted - - he worked as a police officer. Because Thomas' comment was not directed to arresting Kundratic or otherwise exerting police authority over him, it cannot be sufficient to transform Thomas into a "state actor" here.

B. The Baseball Cards

Kundratic also points to the alleged theft of his baseball card collection by Thomas as evidence of state action that violated his property rights pursuant to the Fourteenth Amendment. With

---

[3] Thomas' reference came in the context of a heated exchange concerning whether Kundratic's P.F.A. was justified in the context of a larger "discussion" about the cost of hiring a hit man that was initiated by an unidentified third party.

9

regard to the "theft" of the baseball cards, Kundratic admitted at his deposition that he did not witness Thomas removing the baseball cards and that he has no evidence that Thomas took the cards. (Doc. 116-2, Pages 101-02). In fact, Kundratic admitted that, as of the date of his deposition, the baseball cards are still in the marital residence. (Doc. 116-2, Page 102). Given these admissions, Kundratic cannot establish that Thomas ever took his baseball cards anywhere, much less that he did so while acting under color of law.

    C.    The Combination to the Safe

Kundratic asserts that Thomas also violated his Fourteenth Amendment rights by accessing the combination to his personal safe through the abuse of "his badge of authority". (Doc. 116 at 20). Kundratic further asserts that this was done "at the behest of Tina Gartley". [4] (Id.). In an attempt to prove this, Kundratic directs the Court to his Exhibits EE and S, respectively. Ex. EE is a transcript of an equitable distribution hearing conducted July 9, 2009 at which Sophia Kundratic testified that she did not have the combination to the safe in the Kundratic's marital residence. (Doc. 119-2 at 33-34). Ex. S is, in pertinent part, an email dated September 9, 2009 from Thomas to Defendant Gartley in which he acknowledges:

---

[4] Kundratic acknowledged during his deposition (Doc. 116-2 at 38-54) that he had no direct knowledge indicating that Gartley had directed Thomas to open the safe.

10

> Just want to know that we were able to open the safe.
> There were coins, sports cards, and personal papers of
> Andrews. They are in a box ready for him.

These exhibits taken together do not amount to evidence that Thomas "used his badge of authority" to learn the combination to the safe. They only provide proof that, some two months after Sophia Kundratic testified at the equitable distribution hearing, the combination to the safe had been in some undefined manner obtained. Thomas' email to Gartley merely indicated that "we" have been able to open the safe. It provides no proof that Thomas was the party that obtained the combination, much less that he did so while acting under color of state law.

D. The Hidden Documents

Kundratic also complains that certain documents that had been secured in his pool house were stolen by Thomas and given to Defendant Gartley in an attempt to impede his (Kundratic's) ability to represent himself in his divorce proceeding in violation of his First Amendment rights. (Doc. 120, at 19). Here, again, he acknowledges that he did not observe Thomas taking these documents nor does he have any direct evidence that Thomas did so. (Doc. 116-2 at 106-08). Beyond that, Kundratic seems not to have considered the possibility that his wife had access to these documents or that they could have been obtained by Gartley in some other fashion. In any event, Kundratic's allegation that Thomas "stole" his documents

11

is based purely on speculation and belief and is unsupported by concrete evidence of any kind.

    E.    Thomas' Influence Over Silverblatt and Lumbis

Kundratic alleges that Thomas asserted his influence as a state policeman to cause his attorneys, Defendants Silverblatt and Lumbis, to exercise less than their best efforts on his behalf during his divorce proceeding. (Doc. 120 at 18). Yet, he acknowledged at his deposition that he never saw either of these men speak to Thomas nor does he have any direct evidence that they communicated with Thomas in any way. (Doc. 116-2 at 24-27 and 34-36). His only support for his opinion that Silverblatt and Lumbis succumbed to Thomas' alleged influence over them is his personal speculation and suspicion. He has no proof whatsoever that any alliance between his attorneys and Thomas ever existed.

    F.    Thomas' Menacing Behavior

Finally, Kundratic contends at several places in his brief (Doc. 120, at 15, 17, and 18) that Thomas engaged in menacing or threatening behavior designed to intimidate him and thereby obstruct his access to the courts. When questioned about the scope of Thomas' alleged menacing behavior, Kundratic described it as Thomas' mere presence at the various hearings conducted during his divorce coupled with the fact that he habitually walked around Kundratic's residence clad only in his boxer shorts during the time that he co-habited with Kundratic's wife. (Doc. 116-2 at pages 87-

95). Thomas' presence at a hearing involving the rights of his then girlfriend, Sophia Kundratic, cannot be seen as an abuse of official power. Kundratic stated specifically that Thomas was not in uniform on these occasions nor did he testify that Thomas spoke or took any other action at these hearings. With respect to Thomas allegedly walking about the Kundratic home in his boxer shorts during the time when he resided there, Kundratic acknowledged that he was never present on these occasions. Without discussing the propriety of strolling around one's residence clad only in boxer shorts, Kundratic's testimony on this point, even if accepted as true, does not establish any abuse of official power.

V. Conclusion.

Like every saga, this one must have an end. This case has evolved from a domestic dispute and has now been aired in three separate courts over a period of almost seven years. While the Court understands Plaintiff Kundratic's frustration at the failure of his marriage and the resulting lengthy process to determine the property rights and custody rights of the parties, Kundratic's disappointment with the various decisions made in the Luzerne County Court of Common Pleas is not the stuff of which a federal lawsuit is made. He has not even attempted to provide a plausible explanation of why three different attorneys would prostitute their services to suit the needs of Defendant Thomas. More importantly, Kundratic has produced no evidence that the sordid conspiracy he

13

alleges ever existed. His surmise and belief that it did, standing alone, is not enough to create a material fact in dispute here. See *Lexington Insurance Company and Berkely Investment Group, supra*. There is simply no evidence that has been brought to this Court's attention from which a reasonable juror could conclude that Kundratic is entitled to relief. Consequently, the motions for summary judgment filed by all remaining Defendants must be granted. An Order consistent with this determination shall be filed contemporaneously herewith.

BY THE COURT

                                        S/Richard P. Conaboy
                                        *Honorable Richard P. Conaboy*
                                        *United States District Court*

*Dated: November 26, 2013*